IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JON NORGAARD, | ) | Civil No. 06-1144-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    Peter W. Preston
    Meagan A. Flynn
    Preston Bunnell & Flynn, LLP
    1500 S.W. First Avenue, Suite 770
    Portland, OR 97201-5837
        Attorneys for Plaintiff

    Peter D. Keisler
    Asst. Attorney General
    Karin J. Immergut
    Asst. U.S. Attorney
    R. Michael Underhill
    Torts Branch, Civil Division
    Eric Kaufman-Cohen
    Torts Branch, Civil Division
    U.S. Department of Justice
    7th Floor Federal Building, Room 7-5395
    P.O. Box 36028
    450 Golden Gate Avenue
    San Francisco, CA 94102-3463
        Attorneys for Defendant

FINDINGS AND RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Plaintiff Jon Norgaard brings this admiralty action alleging that defendant, the United States of America, is liable for a knee injury he suffered while working as a seaman aboard the vessel SACAGAWEA. Defendant moves for summary judgment. The motion should be granted.

## FACTUAL BACKGROUND

On August 27, 2004, the date of the alleged accident giving rise to this action, plaintiff was the operator of the crew boat SACAGAWEA, a vessel that is owned and operated by the Port of Portland (the Port). The SACAGAWEA is primarily used to ferry crew members to the dredge OREGON. The Port owns and operates the dredge OREGON, and employed plaintiff and all others who worked on the SACAGAWEA and the OREGON.

At the time of plaintiff's alleged injury, the Port was using the OREGON to dredge the main ship channel of the Columbia River. The Port has provided dredging services to the United States Army Corps of Engineers (the Corps) pursuant to a series of contracts first executed in 1965. In August, 2004, the dredging work was being performed pursuant to a five year contract that the Port and the Corps entered into on June 30, 2000. That contract provided that the Port was to:

FINDINGS AND RECOMMENDATION - 2

> [A]ssist in improving and maintaining the federally authorized 40 foot deep navigation channel in the Columbia and Willamette Rivers by loaning, to the United states Army Corps of Engineers, a suitable pipeline dredge with full crew and attendant equipment, at a charge of reimbursement for the full operating costs of the dredge without profit and on a basis approved by the Contracting Officer.

The contract further provides that:

> the Contractor (the Port of Portland) shall furnish and maintain all plant(s) heretofore described and all labor, fuel (or electric power) materials, and supplies required to operate in accordance with these specifications.

The OREGON is identified as the dredging vessel in the contract between the Port and the Corps. In a Project Specific Management Plan submitted to defendant, the Port stated that:

> The Dredge OREGON is owned and operated by the Port of Portland to maintain the Port's wharf and berth areas and to provide sand fill to develop waterfront property.
>
> Several months of the year, it is leased to the U.S. Army Corps of Engineers on a non-profit, cost-reimbursable basis for maintaining portions of the Lower Columbia and Willamette Rivers' 40-foot-deep channel under a requirement of "Local Cooperation."

Under the series of contracts between the Port and the Corps, the Port is typically obligated to provide dredging services to the Corp from June through September. With the Corps' written approval, the Port may withdraw the OREGON and associated vessels like the SACAGAWEA from the contract to perform its own dredging operations. The Port may also rent the OREGON to third parties.

FINDINGS AND RECOMMENDATION - 3

The contract between the Port and the Corps states that the Port is responsible for providing the crew to operate the OREGON and all "attendant vessels," including the SACAGAWEA. The contract also provides that the Port has day-to-day operational control over the OREGON and all "attendant vessels." The Corps' control over dredging operations is limited to a priority of access to the OREGON, and matters such as the issuance of dredging orders specifying hours of work, location of work, sequence of work, periods of idleness, and finished product requirements. The contract specifically provides that this control "does not, in any manner, conflict or change the [Port's] responsibility for all plant and equipment as set forth in [the] contract clause "PERMITS AND RESPONSIBILITIES."

Section 00700, § 52.236-7 of the contract, entitled "PERMITS AND RESPONSIBILITIES," provides that:

> The [Port] shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. The [Port] shall also be responsible for all damages to person or property that occur as a result of the [Port's] fault or negligence. The [Port] shall be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under contract.

Section 52.236-6, captioned "SUPERINTENDENCE BY THE CONTRACTOR," provides that:

FINDINGS AND RECOMMENDATION - 4

> At all times during performance of this contract and
> until the work is completed and accepted, [the Port]
> shall directly superintend the work or assign and
> have on the worksite a competent superintendent who
> is satisfactory to the Contracting Officer and has
> authority to act for [the Port].

Section 52.236-19, captioned "ORGANIZATION AND DIRECTION OF THE WORK," provides that:

> Work performance under this contract shall be
> under the full-time resident direction of (1)
> the Contractor, if the Contractor is an individual;
> (2) one or more principal partners, if the
> Contractor is a partnership; or (3) one or more
> senior officers, if Contractor is a corporation,
> association, or similar legal entity. However, if
> the Contracting Officer approves, the Contractor may
> be represented in the direction of the work by a
> specific person or persons holding positions other
> than those identified in this paragraph.

Plaintiff worked for the Port as a crane operator from 1990 to 1994, and began operating crew boats as an employee of the Port in 1994. As a crew boat operator, plaintiff ferried supplies and crew members to the dredge OREGON. He also assisted in dredging operations and performed routine maintenance onboard the crew boats that attended the OREGON.

Plaintiff attended 40 hours of safety training, provided by the Port, as a Port employee and Port crew boat operator. Another Port employee who operated a crew boat trained plaintiff in the operation and maintenance of the SACAGAWEA.

As a crew boat operator, plaintiff received his orders from the dredge captain, who was a Port employee. From May 2004 through August 2004, plaintiff was assigned by the dredge

FINDINGS AND RECOMMENDATION - 5

captain to operate the SACAGAWEA. He also worked as a member of the dredge OREGON's deck crew.

During the time that he worked for the Port, plaintiff never received any instructions, directions, or orders concerning the operation or maintenance of the SACAGAWEA or the dredge OREGON from the Corps.

### PLAINTIFF'S CLAIMS

Plaintiff brings this action pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30903 et seq. and the Public Vessels Act, 46 U.S.C. § 31101 et seq.

Plaintiff alleges that he was injured on August 27, 2004, while working as a boat operator on the SACAGAWEA, which was operating on the Columbia River, "to provide assistance to the work of the dredge OREGON, under contract with the Army Corps of Engineers." Plaintiff alleges that, while he was performing routine maintenance in the engine room, a sudden movement of the vessel caused him to fall and strike both knees.

Plaintiff alleges that defendant The United States "through its agents and employees, was negligent" in the following ways:

> -Failing to ensure that the vessel provided a fixed ladder in the engine room to allow safe access to areas requiring routine maintenance;

>    -Permitting crew members, including plaintiff, to perform routine maintenance when the vessel was in the open and subject to sudden shifts of movement;
>
>    -Failing to warn or instruct plaintiff regarding a safer technique for performing the routine engine maintenance;
>
>    -Failing to keep a proper lookout for the safety of the crew, and particularly the plaintiff;
>
>    -Failing to maintain the vessel in such a way that routine engine room maintenance could be safely performed; and
>
>    -Failing to provide a fixed ladder conforming to the standards set forth in 29 CFR 1910.27.

Plaintiff alleges that, as a result of defendant's negligence, he suffered injury to both knees, which ultimately required total knee replacement of both knees. He seeks recovery of general damages and economic damages.

In addition to filing the present action against the United States in this federal district court, plaintiff also brought an action against the Port in the Multnomah County

FINDINGS AND RECOMMENDATION - 7

Circuit Court. In that action, plaintiff alleges that the Port owns the SACAGEWEA and the dredge OREGON, and alleges the same acts of negligence against them as are alleged against the United States here.

**STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc.,

FINDINGS AND RECOMMENDATION - 8

477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## DISCUSSION

The Public Vessels Act (PVA) and the Suits in Admiralty Act (SIAA) waive the sovereign immunity of the United States under limited circumstances, and provide a jurisdictional basis for bringing an action against the United States in situations in which a traditional admiralty action could have been brought against the government if it were a private party. <u>See</u>, e.g., <u>Trautman v. Buck Steber, Inc.</u>, 693 F.2d 440, 443 (5th Cir. 1982).

I. <u>Public Vessels Act</u>

The Public Vessels Act, 46 U.S.C. § 31101 <u>et seq.</u>, provides that a civil action may be brought *in personam*, in admiralty, against the United States for "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1).

Defendant contends that the PVA does not apply here, and that plaintiff cannot maintain an action against it, because the SACAGAWEA and the dredge OREGON are not public vessels within the meaning of the PVA.

I agree. Though the PVA does not define what constitutes a "public vessel" within the meaning of the Act, defendant

correctly notes that case law defines such a vessel as one that is owned and operated by the United States. Blevins v. United States, 769 F.2d 175, 180 (4th Cir. 1985); Smith v. United States, 346 F.2d 449 (4th Cir. 1965). Defendant also correctly notes that a vessel that is "demise" or "bareboat" chartered to the United States may be considered a "public vessel" within the meaning of the PVA.[1] Favorite v. Marine Personnel and Provisioning, Inc., 955 F.2d 382, 385 (5th Cir. 1992); Blanco v. United States, 775 F.2d 53 (2nd Cir. 1985). Vessels that are "time chartered" to the United States, however, are not public vessels within the meaning of the PVA.[2] Williams v. Central Gulf Lines, 874 F.2d 1058, 1060 (5th Cir. 1989).

Plaintiff contends that the Ninth Circuit has not addressed the definition of "public vessels" within the meaning of the PVA, and argues that the relationship between the Port and the Corps here is similar to that supporting the conclusion that the vessel in question in Favorite was a "public vessel" within the meaning of the PVA. These

---

[1] Under a "demise" or "bareboat" charter, the owner relinquishes possession, command, and navigation completely for the duration of the contract. Guzman v. Pichirilo, 369 U.S. 698, 699 (1962). A bareboat charter is effectively treated as the owner of the vessel during the time of the charter. Reed v. Steamship Yaka, 373 U.S. 410, 412 (1963).

[2] Under a time charter, the owner of the vessel maintains possession and control, provides the crew, and equips and maintains the vessel. In re Tidewater Barge Lines, Inc., 2005 WL 3992463 (D. Or. 2005).

FINDINGS AND RECOMMENDATION - 10

arguments fail.  In Taghadomi v. United States, 401 F.3d 1080, 1083 fn. 3 (9th Cir. 2005), the Ninth Circuit noted that a public vessel is a vessel "owned or operated by the United States" and used in a public capacity."  In Favorite, unlike here, the vessel that the court concluded was a "public vessel" within the meaning of the PVA was bareboat chartered to the United States Military Sealift Command (MSC), under a charter specifically providing that "operational control" would be exercised by the MSC.  Favorite, 955 F.2d at 387.

The record before the court on summary judgment supports only the conclusion that the SACAGEWEA and the OREGON were not "public vessels" within the meaning of the PVA.  The record establishes that these vessels were owned by the Port, not by the United States, and that the United States was not a demise or bareboat charterer of either vessel at the time of plaintiff's alleged injury.  Under a contract between the Port and the Corps, the Corps charters the dredge OREGON and attendant vessels for four months each year during a five year period.  Under that time charter, the Port maintains possession and control of these vessels, equips them and makes repairs, and provides the crews.  This arrangement does not make the dredge OREGON and the attendant vessels "public vessels" within the meaning of the PVA.

FINDINGS AND RECOMMENDATION - 11

II. <u>Suits in Admiralty Act</u>

The Suits in Admiralty Act (SIAA), 46 U.S.C. § 30903 <u>et seq.</u>, is broader than the PVA, because it is not limited to damages caused by a "public vessel" of the United States. <u>Taghadomi</u>, 401 F.3d at 1083. Under the SIAA, actions may be brought against the United States under circumstances "in which, if a vessel were privately owned or operated . . . or if a private person or property were involved, a civil action in admiralty could be maintained...." 46 U.S.C. § 30903(a).

As discussed above, the Corps contracted for the services of the Port's dredge and attendant vessels as a time charterer. Under traditional principles of admiralty, an injured seaman cannot bring a claim against a time charterer unless he can show either that the time charterer had enough control over the vessel to be considered its owner *pro hac vice*, or that the time charterer was actively negligent. <u>Alexander v. United States</u>, 63 F.3d 820, 822 (9th Cir. 1995).

Based upon the record before the court, a reasonable trier of fact could not conclude that the Corps exercised any control over the SACAGEWA, exercised any day-to-day control over the dredge OREGON, or has ever acted as the owner of either vessel.

There is likewise no evidence in the record that would support the conclusion that the Corps might be liable based

FINDINGS AND RECOMMENDATION - 12

upon a negligence claim related to the operation of the vessels. Defendant correctly notes that, in order to prevail on a negligence claim against the United States, plaintiff must establish that it breached a duty of care. Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811 (2001). Defendant also correctly notes that, under admiralty law, the owner of the vessel has the duty to provide seamen a safe work environment and a seaworthy vessel. Hudson Waterways Corp. v. Schneider, 365 F.2d 1012, 1014 (9th Cir. 1966) (duty of owner to provide seaworthy ship "absolute and non-delegable"). There is no evidence in the record that would support the conclusion that the Corps ever acted as an owner of the SACAGEWEA or the dredge OREGON.

Plaintiff has not shown the existence of evidence supporting the conclusion that defendant owed him a duty of care as an owner or operator of the vessel. The record supports only the conclusion that, in the circumstances giving rise to this action, the Port acted as an independent contractor, operating its own vessels through the use of its own employees, including plaintiff. Under admiralty law,

> the United States is not liable for injuries to the employees of its independent contractors arising out of the performance of inherently and peculiarly dangerous work in circumstances in which the contractor is solvent and is as well informed and competent as the Government in the methods necessary to avoid accidental injuries to workers, absent significant Government involvement in safety aspects of the job or a Government act aggravating the job's danger.

FINDINGS AND RECOMMENDATION - 13

Nelson v. United States, 639 F.2d 469, 479 (9th Cir. 1980). There is no evidence supporting the conclusion that the Port was not solvent, and the evidence supports only the conclusion that the Port is at least as "well informed and competent" as the Corps in the methods required to avoid injuries to its own employees aboard its own vessels. In addition, pursuant to a Project Specific Management Plan that it submitted as a requirement of its contract with the Corps, the Port acknowledged that it is responsible for providing a safe and healthy environment for its employees, stated its intention to create and promote safety among its employees, and acknowledged its responsibility to comply with applicable safety laws and regulations governing its activities. In its contract with the Corps, the Port specifically acknowledged that none of the responsibility for complying with safety provisions in the contract were delegated to the Corps' employees, and that the Port was responsible for initiating and maintaining a safety program that complied with the Corps' requirements.

Based upon this record, plaintiff cannot establish that the Corps had "significant involvement" in the "safety aspects" of plaintiff's job. Accordingly, and in the absence of evidence of any act by the Corps "aggravating the danger" of plaintiff's job, defendant is entitled to summary judgment.

## CONCLUSION

Defendant's motion for summary judgment (#6) should be GRANTED.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due July 10, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 25th day of June, 2007.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge